# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Dean L. Weaver, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:13-CV-01698-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| John Lucas Tree Expert Co., | ) | |
| Arthur Batson, Jr., and Arthur Batson, III, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants John Lucas Tree Expert Co., Arthur Batson, Jr., and Arthur Batson, III's (collectively "Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's request for leave to amend his Complaint is denied.

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (2006). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." *Id.* § 1332(a), (a)(1). Plaintiff is a citizen and resident of the State of South Carolina. Defendant John Lucas Tree Expert Co. is organized under the laws of the State of Maine and maintains its principal place of business in Falmouth, Maine. Likewise, the individual Defendants, Arthur Batson, Jr. and Arthur Batson, III, are residents of the State of Maine. Plaintiff alleges damages in excess of the jurisdictional prerequisite.

Therefore, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## <u>BACKGROUND</u>

This action arises out of the termination of Plaintiff from his employment with John Lucas Tree Expert Co. ("Company").  Accepting the truth of the allegations in Plaintiff's Complaint and viewing all inferences in the light most favorable to Plaintiff, *e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the facts, for purposes of ruling on Defendants' Motion to Dismiss, are as follows.

Plaintiff was initially hired by the Company, which provides tree maintenance services, on January 18, 1977, as a "tree climber" in Maine.  In 2004,[1] he was offered a position as manager of the Company's South Carolina division by Arthur Batson, Jr. ("Batson, Jr."), the Company's president.  Plaintiff subsequently accepted Batson, Jr.'s offer and "entered into a handwritten, signed contract agreeing on wages and a profit sharing arrangement."  Copy attached to Complaint Ex. A ("Agreement").  The Agreement, which was purportedly signed by Batson, Jr. in his capacity as the Company's president, states in its entirety:

| Dean Weaver | | 12/24/03 |
|---|---|---|
| A. | Pay effective Jan 1 | 1,200 @ week ($62,400) |
| B. | Signing bonus: | $10,000 ($2,500 @ month for 4 months) |
| C. | Moving expenses: | up to $6,000 |
| D. | Travel: | up to $500 @ month for 6 months |
| E. | Vehicle: | pick-up with AC |
| F. | Snow removal: | Lucas will snowplow 2004 |

---

1.  Although Plaintiff's Complaint states that he was offered the position of manager in the South Carolina Division of the Company in 2004, the Agreement is dated December 24, 2003.

G.      10% of NET profit from South Carolina operations

H.      Mortgage:          two mortgage payments if necessary if house not sold by June

I.      Room & Board:     150 @ week for board and room covered by Lucas and price mutually agreeable for Jan to June 1

[SIGNATURE]

Plaintiff alleges that after relocating his family to South Carolina and "perform[ing] the job of manager as requested," in 2010, Batson, Jr. transferred the management responsibilities associated with the South Carolina division of the Company to his son, Arthur Batson, III ("Batson, III"), who is or was the Company's Chief Financial Officer.  Plaintiff also contends that, despite his repeated requests, Defendants failed to compensate him pursuant to the terms of the Agreement.  Plaintiff alleges that he nevertheless continued to work and perform in his capacity as manager prior to and until his termination from the Company on August 15, 2012.

As of the time of his termination, Plaintiff had accrued thirty-five years of experience with the Company and, "prior to his interaction with [Batson, III] acting as president of the South Carolina Company, had no disciplinary actions or negative comments on performance reviews."[2] Plaintiff further alleges that, since his separation from the Company, he has been unable to secure similar employment, and he has experienced extreme emotional trauma, depression, and distress.  In view of his thirty-five-year tenure with the Company and his annual earnings of approximately $65,000, Plaintiff claims to be owed an amount in excess of $75,000.  Following his termination, Plaintiff instituted this action.

---

2.    Paragraph 23 of Plaintiff's Complaint also states that "Plaintiff was paid what was due under the terms of the profit sharing agreement, upon exit from the company."  However, in light of Plaintiff's other allegations and when read in the context of the Complaint as a whole, the Court assumes for purposes of this Motion that this statement is the result of a scrivener's error.

## PROCEDURAL HISTORY

On June 20, 2013, Plaintiff filed this lawsuit alleging three causes of action: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (3) a violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*

On July 29, 2013, Defendants filed their collective Answer to Plaintiff's Complaint and moved to dismiss Plaintiff's breach of contract cause of action, pursuant to Rule 12(b)(6), to the extent that Plaintiff's claim is based on his termination from the Company. Defendants also moved to dismiss Plaintiff's cause of action alleging a breach of the implied covenant of good faith and fair dealing pursuant to Rule 12(b)(6), as well as Plaintiff's cause of action under the South Carolina Payment of Wages Act. Plaintiff filed his Response on August 29, 2013, and also requested, in the alternative, leave to amend the Complaint. Defendants thereafter filed a Reply, asserting that Plaintiff's Response raised issues not previously addressed. This matter is now ripe for consideration.

## STANDARD OF REVIEW

A motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court "articulated a 'two-pronged approach' to assessing the sufficiency of a complaint." *Robertson v. Sea Pines*

*Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the complaint must "contain factual allegations in addition to legal conclusions." *Id.* Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), and "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, to state a facially plausible claim the complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Nevertheless, under notice pleading, a complaint must simply provide the defendant with "fair notice" of the claim and the grounds upon which the plaintiff seeks to obtain relief. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, the trial judge must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. The court must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, it should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable

conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citation and internal quotation marks omitted)). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, although the court must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on the motion, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Id.* at 679.

## ANALYSIS

Defendants move to dismiss Plaintiff's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of the South Carolina Payment of Wages Act. The Court will address the legal sufficiency of Plaintiff's claims, as well as Defendants' arguments and objections thereto, *seriatim*.

## I.      Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract cause of action "[t]o the extent . . . [it] is based on the termination of his employment." Plaintiff claims that, "in contravention of the parties [sic] mutual agreement, [he] was not compensated per the terms of the contract." Plaintiff also alleges that he "was terminated without cause, out of compliance with Defendant's policies and procedures and in a manner inconsistent with the treatment of similar employees in violation of Defendant's policies." Plaintiff seeks to recover all compensation, profits, commissions, back pay, and benefits purportedly due as a result of the breach. Plaintiff prays for actual and punitive damages against Defendants jointly and severally. Although it appears Plaintiff bases his cause of action for breach of contract on both the termination of his employment with the Company and the failure of Defendants to compensate

him pursuant to their Agreement, because Defendants move to dismiss Plaintiff's breach of contract cause of action only to the extent it is based on his termination, the Court need not address Plaintiff's breach of contract claim as it relates to his compensation at this juncture. The Court concludes that Plaintiff has failed to state a plausible right to relief under a theory of breach of contract based on his termination from the Company.

South Carolina has long followed the doctrine of at-will employment. *E.g.*, *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (S.C. 2010); *see also Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999) ("We find the policy of employment at-will provides necessary flexibility for the marketplace and is, ultimately, an incentive to economic development. Accordingly, we affirm and adhere to the employment at-will doctrine in South Carolina."). Under the doctrine of at-will employment, an "at-will employee may be terminated at any time for any reason or for no reason, with or without cause." *Legette v. Nucor Corp.*, 2:12-CV-1020-PMD, 2012 WL 3029650, at *3 (D.S.C. July 25, 2012) (quoting *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 636 (S.C. 2011) (internal quotation marks omitted)); *King v. Marriott Int'l, Inc.*, 520 F. Supp. 2d 748, 755 (D.S.C. 2007), *aff'd*, 267 F. App'x 301 (4th Cir. 2008).

"Of course, an employer and employee may choose to contractually alter the general rule of employment at-will and restrict their freedom to discharge without cause or to resign with impunity." *Prescott*, 516 S.E.2d at 925. Because an at-will employment relationship is presumed in South Carolina, *e.g.*, *id.* at 927 n.8, "in order to survive a Rule 12 motion to dismiss on a claim for breach of contract of employment, a [p]laintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship.'" *Perrine v. G4S Secure Solutions (USA), Inc.*, CA 2:11-1210-RMG, 2011 WL

3563110, at *1 (D.S.C. Aug. 9, 2011) (quoting *Amason v. P.K. Management, LLC*, No. 10-1752, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011)). Therefore, to address Plaintiff's breach of contract cause of action it is necessary to determine whether the Parties entered into a contractual agreement; if so, whether such an agreement altered the presumptive at-will employment relationship; and consequently, whether any purported contract was ultimately breached by Defendants' termination of Plaintiff's employment.

### Contractual Relationship

As stated above, it is first necessary to determine whether a contract was formed.[3] It is axiomatic that to recover under a theory of breach of contract, a valid contract must have existed between the parties. *E.g.*, *Fung Lin Wah Enters. Ltd. v. E. Bay Imp. Co.*, 465 F. Supp. 2d 536, 542–43 (D.S.C. 2006) (quoting *Tomlinson v. Mixon*, 626 S.E.2d 43, 49 (S.C. Ct. App. 2006) (Anderson, J., dissenting) (internal quotation marks omitted), *vacated by consent of parties*, 646 S.E.2d 147 (S.C. 2007)); *Tidewater Supply Co. v. Indus. Elec. Co.*, 171 S.E.2d 607, 608 (S.C. 1969). Hence, the plaintiff's complaint must contain allegations both of a contract and a breach thereof before any damages are recoverable. *Tidewater Supply Co.*, 171 S.E.2d at 608 (citing *Peeples v. Orkin Exterminating Co.*, 135 S.E.2d 845 (S.C. 1964); *Wharton v. Tolbert*, 65 S.E. 1056 (S.C. 1909)). Likewise, to establish the existence of an employment contract, the employee must prove all requisite elements of a contract. *See Prescott*, 516 S.E.2d at 926.[4]

---

3. Although the Court could accept, *arguendo*, the existence of a contract between the Parties and address only the terms of any such agreement, based on the ambiguities at this stage of the litigation, the Court concludes that both its reasoning and the position of the Parties will be better served by a more detailed analysis.

4. To constitute a valid and enforceable contract, there must be, or have been, a meeting of the minds as to all essential and material terms of the agreement. *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 67 (S.C. 2005) (citing *Player v. Chandler*, 382 S.E.2d 891, 894 (S.C. 1989)). Terms such as price, time, and place are deemed indispensable and must be both detailed with reasonable certainty and assented to by the parties. *See Land v. Wal-Mart Stores E., L.P.*, No. 4:07-cv-00369-RBH, 2008 WL 1766723, at *4 (D.S.C. Apr. 15, 2008) (quoting *McPeters v. Yeargin Constr. Co.*, 350 S.E.2d 208, 211 (S.C. Ct. App. 1986)). Notwithstanding these prerequisites, a contract may be created by, or arise from, written or oral communications or conduct. *Prescott*, 516 S.E.2d at 926 (citing *Gaskins v. Blue Cross-Blue Shield of S.C.*, 245 S.E.2d 598 (S.C. 1978)).

A contract, if created, will be either bilateral or unilateral in nature. In the employment context, the majority of employment agreements are unilateral contracts. *Id.* (citing *Small v. Springs Indus., Inc.*, 357 S.E.2d 452, 454 (S.C. 1987)). Unlike with a bilateral contract, which involves both parties exchanging mutual promises, *see Int'l Shoe Co. v. Herndon*, 133 S.E. 202, 203 (S.C. 1926), a unilateral contract is created "when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance." *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 165–66 (S.C. 2003). A unilateral contract contains three elements: (1) a specific offer, (2) the communication of that offer to the employee, and (3) the performance of employment-related duties in reliance on the offer. *Prescott*, 516 S.E.2d at 926 (citing 82 Am. Jur. 2d *Wrongful Discharge* § 84 (1992)). To prove the existence of an employment contract, the employee must establish each element. *Id.*

The first requirement for the creation of a unilateral contract is the existence of a specific offer.[5] Plaintiff claims that he was offered and accepted a position with the Company, as a manager in the South Carolina division, and that he agreed to perform certain duties and responsibilities, as did Defendants. Plaintiff further alleges that Defendants "promised to compensate Plaintiff at a higher rate of pay and pay 10% of the division profit annually."[6] Defendants admit that Plaintiff was offered, and thereafter accepted, a position as manager of the Company's South Carolina division. Therefore, the Court finds that Plaintiff has sufficiently

---

5. Under contract law, an offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* at 926 (quoting *Carolina Amusement Co. v. Conn. Nat. Life Ins. Co.*, 437 S.E.2d 122, 125 (S.C. Ct. App. 1993)) (internal quotation marks omitted). "A valid offer 'identifies the bargained for exchange and creates a power of acceptance in the offeree.'" *Sauner*, 581 S.E.2d at 166 (quoting *Carolina Amusement Co.*, 437 S.E.2d at 125). "Any conduct from which a reasonable person in the offeree's position would be justified in inferring a promise in return for a requested act . . . amounts to an offer." *Prescott*, 516 S.E.2d at 926 (quoting *Carolina Amusement Co.*, 437 S.E.2d at 125). Further, an offer must be specific in its terms, and it must be intended in and of itself to establish a legal relationship upon acceptance. *Id.* at 926 (quoting *McLaurin v. Hamer*, 164 S.E. 2, 5 (S.C. 1932)).

6. Although it is unclear from the factual allegations in Plaintiff's Complaint whether the purported offer he acted and relied upon was oral or written in nature—or more specifically, whether the Agreement attached to the Complaint as Exhibit A was itself an offer or merely a subsequent memorialization of the agreed upon terms—it is unnecessary to resolve this question at this stage of the litigation.

alleged the existence of a specific offer—whether oral or written—to satisfy the first element of a unilateral contract.

The second element of a unilateral contract of employment requires the communication of the specific offer to the employee. *Prescott*, 516 S.E.2d at 926 (citing 82 Am. Jur. 2d *Wrongful Discharge* § 84 (1992)). In view of the allegations previously addressed, as well as the fact that Plaintiff attached to the Complaint the Agreement entered into by and between the Parties, the Court finds, for purposes of this Motion, that the purported offer was communicated to Plaintiff prior to his performance.

To create a unilateral contract, the final requirement is that there must be, or have been, a performance of the relevant employment-related responsibilities or duties in reliance on the specific offer. *Id.* (citing 82 Am. Jur. 2d *Wrongful Discharge* § 84). As stated above, a unilateral contract is created when the offeree accepts the offeror's offer "not by mutual promise, but by actual performance." *Sauner*, 581 S.E.2d at 165–66. Plaintiff alleges that he agreed to perform certain duties and responsibilities and performed the job of manager as requested, throughout the course of his employment with Defendants. Construing the Complaint in the light most favorable to the Plaintiff, the Court finds Plaintiff performed the job of manager of the Company's South Carolina division in reliance on the aforementioned communicated offer.

The Court finds that Plaintiff has pleaded facts sufficiently alleging the existence of a contractual relationship between the Parties. Although Plaintiff's conclusory assertions that a contract existed arguably may not have been sufficient, without more, to allege the creation of a contract of employment, the Agreement attached to Plaintiff's Complaint supports the conclusion that there was a meeting of the minds between the Parties with regard to the essential terms.[7]

---

7.    In deciding whether a plaintiff's complaint will survive a motion to dismiss under Rule 12(b)(6), "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du*

### *Alteration of At-Will Employment Status*

Next, the Court must determine whether the contract entered into by the Parties altered the Plaintiff's presumptive status as an at-will employee.[8] Plaintiff does not specifically assert in his Complaint that he was not an at-will employee or that his status as an at-will employee was altered in any way, and he similarly failed to allege facts that would permit any such inference.

Again, in South Carolina, at-will employment is the default employment status. *See Mathis*, 698 S.E.2d at 778. Under such a theory, "where employment is not for a definite term and there is no contractual or statutory restriction on the right of discharge, the employment is presumed to be terminable at the will of either party." *Taliaferro v. Assocs. Corp. of N. Am.*, 112 F. Supp. 2d 483, 493 (D.S.C. 1999), *aff'd*, 229 F.3d 1144 (4th Cir. 2000).[9] An employee's at-will employment status may be altered, *inter alia*, by oral or written contract, *id.* at 493–94; *Prescott*, 516 S.E.2d at 925–26; or by mandatory and non-disclaimed policies, procedures, or representations in an employee handbook or manual, *Hessenthaler v. Tri-County Sister Help*, 616 S.E.2d 694, 697 (S.C. 2005); *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C.

---

*Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011) (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009))). Moreover, Defendants do not dispute the authenticity of the Agreement, but simply aver the content of the writing "speaks for itself." Accordingly, the Court may consider Exhibit A of Plaintiff's Complaint for purposes of this Motion.

8.    Although it appears Plaintiff was an employee of the Company at the time the Agreement was entered into, "[s]ince there is a presumption of at-will employment, it is necessary to consider whether an offer alters the presumption, regardless of whether the offer occurs at the initial hire or during the employment." *Prescott*, 516 S.E.2d at 927 n.8.

9.    Although South Carolina has recognized several exceptions to the doctrine of at-will employment, *see, e.g.*, *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985) (holding that an at-will employee may not be discharged in violation of a clear mandate of public policy); *Moshtaghi v. The Citadel*, 443 S.E.2d 915 (S.C. Ct. App. 1994) (holding that an at-will employee may not be terminated for exercising constitutional rights), the Court has determined that no such exceptions apply to this matter based on the allegations contained in Plaintiff's Complaint.

2002).[10]  To alter an employee's at-will status under South Carolina law, a contract, policy, procedure, or representation must limit either the duration of the employment or the employer's right to terminate the employee.  *See Wadford v. Hartford Fire Ins. Co.*, CIV. A. 3:87-2872-15, 1988 WL 492127, at *4 (D.S.C. Aug. 11, 1988); *cf. Lord v. Kimberly-Clark Corp.*, 827 F. Supp. 2d 598, 602–05 (D.S.C. 2011) (collecting cases regarding employer policies and handbooks).  If the duration of the employment is limited or the right of termination is restricted, an employee terminated in violation of the parties' agreement may bring a cause of action based on a theory of breach of contract.  *See Wadford*, 1988 WL 492127, at *4.  In sum, to survive the Defendants' Motion to Dismiss with respect to his breach of contract claim, Plaintiff needs to have set forth sufficient factual allegations in his Complaint to state a facially plausible claim that the Parties entered into a contract with terms of employment that limited the duration of the relationship or the right of termination or both.  *See Battle v. Nikanth, LLC*, CA 2:13-543-PMD, 2013 WL 4874976, at *5 (D.S.C. Sept. 11, 2013).

Plaintiff neither specifically alleges that he entered into a contract of employment with Defendants for a definite term nor states any set of facts that warrants such a finding or inference.  Nor does Plaintiff direct the Court to any provision in the Agreement that indicates the Parties intended to limit Plaintiff's employment to, or guarantee it for, a definite term.[11]

---

10.   While the South Carolina Supreme Court has held that where an employee gives, pursuant to an employment agreement, valuable consideration independent of and "in addition to the services to be rendered," the general rule of at-will employment of an indefinite duration is not applicable, *see Orsini v. Trojan Steel Corp.*, 64 S.E.2d 878, 879 (S.C. 1951) (citing *Weber v. Perry*, 21 S.E.2d 193 (S.C. 1942); 35 Am. Jur. 460), the case at bar is distinguishable. In *Weber*, the plaintiff abandoned his established business in one state to accept an offer of employment in another. Moreover, the requirements that the plaintiff cease his then-existing business and move with his family to South Carolina were expressly incorporated into the contract.  *See Weber*, 21 S.E.2d at 193.  In *Orsini*, the South Carolina Supreme Court clarified this exception of sorts, holding that ceasing employment that is terminable at will and relocating one's family to a new state is not sufficient independent consideration to remove the case from the general rule of at-will employment.  64 S.E.2d at 880.  In this case, Plaintiff was already employed by Defendants at the time he accepted the Company's offer, the Company agreed to cover or compensate Plaintiff for various moving-related expenses, and Plaintiff has not alleged that his prior employment was not terminable at will.
11.   Indeed, terms in the Agreement related to compensation and other benefits are outlined only in weekly or monthly amounts and no date is so much as referenced beyond the year 2004.

Instead, Plaintiff simply alleges the formation of a contract at or around the time of his acceptance of Defendants' offer. Accordingly, the Court finds that Plaintiff has failed to allege facts sufficient to overcome the presumption that an employment contract is terminable at will or support a finding that the Agreement constitutes an employment contract for a definite term.

Although Plaintiff claims his termination was contrary to and inconsistent with Defendants' policies and procedures, he fails to reference any handbook or cite any specific policies or procedures. Moreover, Plaintiff does not allege that any such policies or procedures constituted or created an employment contract or in any way altered his status as an at-will employee; instead, Plaintiff merely offers the "conclusory assertion" that his termination was in some manner noncompliant with the Company's policies and procedures. *Cf. Campbell v. Int'l Paper Co.*, No. 3:12-CV-03042-JFA, 2013 WL 1874850, at *5–7 (D.S.C. May 3, 2013) (concluding that plaintiff, who referenced the employer's progressive discipline policies in a more specific manner, did not sufficiently allege the creation of an employment contract to support a cause of action for breach of contract). Plaintiff has not provided sufficient factual allegations to establish the existence of an employment contract that altered the at-will relationship. *Cf. Grant v. Wells Fargo Bank Nat. Ass'n*, CIV.A. 8:13-128-HMH, 2013 WL 4460287, at *4 (D.S.C. July 12, 2013), *report and recommendation adopted*, 2013 WL 4434297 (D.S.C. Aug. 14, 2013); *Nicholson v. Science Applications Int'l Corp.*, C.A. No. 2:12-2779-PMD-BM, 2012 WL 6568399, at *2–4 (D.S.C. Nov. 27, 2012), *report and recommendation adopted*, 2012 WL 6588635 (D.S.C. Dec. 17, 2012). Accordingly, the Court finds that Plaintiff's general and conclusory allegations are not sufficient to state a plausible claim that a contract of employment beyond the at-will relationship existed between the Parties.

### *Breach of Contract*

Finally, it is necessary to determine whether Defendants' termination of Plaintiff gave rise to a cause of action for breach of contract. As stated previously, because an employer may terminate an at-will employee for any reason or no reason whatsoever, the termination of an at-will employee generally will not subject the employer to liability for breach of contract. Having failed to sufficiently allege facts establishing an employment contract that altered his status as an at-will employee, Plaintiff does not state a plausible claim based on a breach of contract resulting from Defendants' termination of Plaintiff. *See Perrine*, 2011 WL 3563110, at *1; *see also Harper v. United States*, 423 F. Supp. 192, 196 (D.S.C. 1976) (citations omitted) ("[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal."). Accordingly, Plaintiff's cause of action for breach of contract, to the extent it is based on his termination from Defendants' employ, is hereby dismissed.[12]

## II. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants also move to dismiss Plaintiff's second cause of action, which Plaintiff styled as a claim for the "Breach of Implied Good Faith and Fair Dealing." Plaintiff asserts that Defendants owed a duty of good faith and fair dealing to Plaintiff which was a duty implied in the contract between the Parties. Plaintiff also alleges that Defendants acted in bad faith by engaging in inherently deceptive conduct to circumvent and defeat the terms and purpose of the contract. The Court construes Plaintiff's claim as one for breach of the implied covenant of good faith and fair dealing. *Cf. First Nat. Bank v. First Nat. Bank of the S.*, CA 6:07-2182-HMH,

---

12. As an ancillary matter, the Court notes that Plaintiff seeks to recover punitive damages based on his claim for breach of contract. However, under a cause of action based on a theory of breach of contract, "a party's damages are limited to those under the contract, and no tort remedies are available, including punitive damages." *Williams*, 529 S.E.2d at 40. Consequently, to the extent Plaintiff's claim is not hereby dismissed, any attempt by Plaintiff to recover punitive damages pursuant to his breach of contract claim is barred as a matter of law.

2007 WL 3232116, at *2 (D.S.C. Oct. 31, 2007) (interpreting claim that an "employer–employee relationship . . . gave rise to a contractual relationship in which . . . the principal bore a *duty* of good faith and fair dealing" as an action for the breach of the implied *covenant* of good faith and fair dealing (emphasis added)); *Riley v. S. Care, Inc.*, 3:13-CV-00357-CMC, 2013 WL 1809788, at *6 (D.S.C. Apr. 29, 2013) (construing plaintiff's claim for "Breach of [the] Implied *Warranty* of Good Faith and Fair Dealing" as one for "breach of the implied *covenant* of good faith and fair dealing" (emphasis added)).

"Although implied covenants are not favored in the law, . . . there exists in every contract an implied covenant of good faith and fair dealing." *Williams*, 529 S.E.2d at 35 (quoting *Commercial Credit Corp. v. Nelson Motors, Inc.*, 147 S.E.2d 481, 484 (S.C. 1966)), *quoted in Osborn v. Univ. Med. Assocs. of Med. Univ. of S.C.*, 278 F. Supp. 2d 720, 741 (D.S.C. 2003). However, the South Carolina Court of Appeals has affirmatively stated that "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004). Instead, the implied covenant of good faith and fair dealing should be viewed "as merely another term of the contract at issue." *Id.* at 884 (citing *Boddie-Noell Props., Inc. v. 42 Magnolia P'ship*, 574 S.E.2d 726, 730 (S.C. 2002)); *cf. Osborn*, 278 F. Supp. 2d at 741 ("Under South Carolina law, however, it is clear that tort remedies are not available for breach of implied covenant of good faith and fair dealing in the employment context." (citing *Williams*, 529 S.E.2d at 36)). Accordingly, to the extent Plaintiff seeks to maintain a separate cause of action for breach of the implied covenant of good faith and fair dealing, Defendants' Motion to Dismiss is granted.

While disposing of an independent cause of action based on a breach of the implied covenant of good faith and fair dealing ordinarily would not preclude a plaintiff from relying on such a theory in support of a breach of contract action, *see Riley*, 2013 WL 1809788, at *6, the Court notes that "no South Carolina court has held that an implied covenant of good faith and fair dealing exists in an at-will employment relationship." *First Nat. Bank*, 2007 WL 3232116, at *2. Indeed, those courts that have addressed the issue explicitly stated or held to the contrary. *E.g.*, *Williams*, 529 S.E.2d at 39–40; *Keiger v. Citgo Coastal Petroleum, Inc.*, 482 S.E.2d 792, 794 (S.C. Ct. App. 1997); *see also, e.g.*, *First Nat. Bank*, 2007 WL 3232116, at *2 (interpreting and applying South Carolina law in disposing of claim based on an implied covenant of good faith and fair dealing in an at-will employment relationship); *Johnson v. Dillard's, Inc.*, C/A No. 3:03-3445-MBS, 2007 WL 2792232, at *17 (D.S.C. Sept. 24, 2007); *Hindman v. Greenville Hosp. Sys.*, 947 F. Supp. 215, 226 (D.S.C. 1996) (same), *aff'd*, 133 F.3d 915 (4th Cir. 1997); *Witt v. Am. Trucking Ass'ns*, 860 F. Supp. 295, 306 (D.S.C. 1994) (same); *Grooms v. Mobay Chem. Corp.*, 861 F. Supp. 497, 506 (D.S.C. 1991) (same), *aff'd*, 993 F.2d 1537 (4th Cir.) (per curiam) (unpublished), *cert. denied*, 510 U.S. 996 (1993). According to the court in *Satterfield v. Lockheed Missiles & Space Co.*, 617 F. Supp. 1359, 1364 (D.S.C. 1985):

> In the context of [at-will employment] it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.

617 F. Supp. at 1364 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983)) (internal quotation marks omitted). As Judge Hawkins succinctly stated, "the concept of at-will employee/employer relations . . . is antithetical to the concept of an implied covenant of good faith and fair dealing." *Id.* at 1363–64. Although the South Carolina Supreme Court has

yet to address this issue directly, it has continued to affirm and enforce the doctrine of at-will employment. *E.g.*, *Prescott*, 516 S.E.2d at 925. Additionally, the various aforementioned decisions support the conclusion that an implied covenant of good faith and fair dealing does not exist in at-will employment relationships in South Carolina. Therefore, the Court does not seek to, nor is it at liberty to, adopt an independent cause of action that would be in conflict with or create an exception to the doctrine of at-will employment.

## III.    South Carolina Payment of Wages Act

Finally, Defendants move to dismiss Plaintiff's third cause of action alleging violation of the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10 *et seq.* Specifically, Plaintiff alleges he accrued profit sharing on an ongoing basis, but that Defendants refused to pay him the accrued profit sharing promised under the contract. Additionally, Plaintiff claims his termination was not "for good cause," and that Defendants' failure to pay him all "wages" earned and accrued was unreasonable, willful, and intentional. Accordingly, Plaintiff claims that he is due a sum in excess of the jurisdictional prerequisite for the profit sharing and an additional amount equal to three times the full amount of unpaid wages and benefits, plus reasonable costs and attorney fees, pursuant to S.C. Code Ann. § 41-10-80(C). Defendants maintain that because the only basis for Plaintiff's SCPWA cause of action is statutorily excluded from the definition of "wages" under the Act, Plaintiff's SCPWA claim should be dismissed. The question before the Court is whether Plaintiff's Complaint contains sufficient factual allegations to support a cause of action under the SCPWA. At this stage in the litigation, the Court finds that Plaintiff's allegations are sufficient to overcome Defendants' Motion to Dismiss.

The SCPWA creates a cause of action that may be maintained by an employee against an employer for the employer's failure to pay wages as required by the Act. *See* S.C. Code Ann. § 41-10-80(C) (Supp. 2012). The South Carolina Supreme Court has noted on multiple occasions that "the purpose of the [SCPWA] is 'to protect employees from the unjustified and willful retention of wages by the employer.'" *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 783 (S.C. 2010) (quoting *Rice v. Multimedia, Inc.*, 456 S.E.2d 381, 383 (S.C. 1995)); *see also Long v. Boston Scientific Corp.*, 665 F. Supp. 2d 541, 553 (D.S.C. 2008) ("[T]he South Carolina Payment of Wages Act is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld." (quoting *Dumas v. InfoSafe Corp.*, 463 S.E.2d 641, 645 (S.C. Ct. App. 1995)) (internal quotation marks omitted)). As explained by the supreme court in *Mathis*, "S.C. Code Ann. § 41-10-40 generally requires an employer to timely pay all wages due and § 41-10-50 provides that when an employer discharges an employee, it must timely pay him all wages due." 698 S.E.2d at 781. An employer's failure to comply with the mandates of § 41-10-40 or § 41-10-50 may enable the employee to "recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." S.C. Code Ann. § 41-10-80(C).[13]

Defendants emphasize that "[f]rom the face of [Plaintiff's] Complaint, the only basis for [his SCPWA] claim is that he was denied 'the value of the accrued profit sharing promised under the contract.'" Indeed, a review of Plaintiff's Complaint and Response in Opposition to Defendants' Motion to Dismiss supports such a summation.[14] Defendants correctly note that

---

13. Notably, however, the South Carolina Supreme Court has previously held that "the penalty set forth in § 41-10-80(C) is discretionary with the trial judge." *Mathis*, 698 S.E.2d at 781 (citing *Rice*, 456 S.E.2d at 383). Additionally, the supreme court in *Rice* articulated that "[t]he imposition of treble damages in those cases where there is a bona fide dispute would be unjust and harsh." *Rice*, 456 S.E.2d at 383.

14. While in Paragraph 51 of his Complaint Plaintiff alleges that, "[u]pon information and belief, the total sum of the value of the accrued time off, exceeds $75,000," given that this is the only such mention of any accrued time off

profit-sharing plans are expressly excluded from the SCPWA's definition of "wages." The SCPWA defines "wages" as follows:

> "Wages" means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract. Funds placed in pension plans or profit sharing plans are not wages subject to this chapter.

S.C. Code Ann. § 41-10-10(2) (Supp. 2012).

Although Plaintiff's decision to label the purported contract term set forth in Paragraph G of the Agreement as a profit-sharing plan is admittedly odd in light of the SCPWA's definition of "wages," the Court is not persuaded, at this juncture, that "10% of NET profit from South Carolina operations" constitutes a profit-sharing plan as the term was contemplated by the South Carolina General Assembly. *See Land v. Wal-Mart Stores E., L.P.*, No. 4:07-cv-00369-RBH, 2008 WL 1766723, at *9 (D.S.C. Apr. 15, 2008) ("[T]he court is not convinced that the legislature meant to exclude profit sharing agreements or bonus/incentive plans like the one in this case."). "Typically, a profit sharing plan, in the plain sense of the term, sets forth a definite formula allocating both the contributions and distributions for each employee participant, with the contributions being tax-deductible." *Osborn*, 278 F. Supp. 2d at 742 (rejecting argument, at summary judgment stage, that plaintiff's equity-interest claim was barred by SCPWA's exclusion of profit-sharing plans from the definition of "wages"). *Black's Law Dictionary* defines a profit-sharing plan as follows:

> An employee benefit plan that allows an employee to share in the company's profits. ERISA governs the administration of many profit-sharing plans, which provide for discretionary employer contributions and provide a definite predetermination formula for allocating the contributions to the plan among the

---

and that Plaintiff has pleaded no facts to support such a claim, the Court assumes this allegation was included in error.

participants. Contributions are frequently allocated in proportion to each participant's compensation.

*Black's Law Dictionary* 1330 (9th ed. 2009). Moreover, the fact that the statutory definition of "wages" excludes "[f]unds placed *in* . . . profit sharing plans," S.C. Code Ann. § 41-10-10(2) (emphasis added), "seems to indicate an intent to exclude retirement-type profit sharing plans where an employer contributes funds to an employee profit sharing account, as opposed to bonus-type profit sharing agreements or plans where the employee is entitled to share in the company's profits." *Land*, 2008 WL 1766723, at *9. Accordingly, from the face of the Agreement, and construing all allegations and inferences in the light most favorable to Plaintiff, there is no indication that the Parties intended for the bonus or incentive pay structure set forth in Paragraph G to establish a profit-sharing plan of the type envisioned by the South Carolina General Assembly. *See id.* ("An argument could be made that the type of profit sharing plans referred to in the statute are those regulated by ERISA and not the bonus/incentive plan here."). Therefore, the Court concludes that Plaintiff's allegations state a plausible claim under the SCPWA sufficient to withstand Defendants' Motion to Dismiss.

## III.   Request for Leave to Amend

Finally, Plaintiff has requested, in the alternative, for leave to amend his Complaint. Specifically, Plaintiff seeks leave to amend "to cure any deficiencies in Pleading," "[s]hould the Court find fault or inadequacy in any cause of action." Defendants, in their collective Reply, do not consent to Plaintiff's request to amend his Complaint.

According to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "leave to amend a complaint should be freely given 'when justice so requires.'" *Woods v. Boeing Co.*, 841 F. Supp. 2d 925, 930 (D.S.C. 2012) (quoting *Fields v. Walpole*, No. 11-1000, 2011 WL 6217081, at *2 (D. Md. Dec. 13, 2011). This deferential and liberal rule is intended to give effect to the favored

policy of resolving cases on their merits rather than disposing of them on mere technicalities. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Therefore, a plaintiff's motion for leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Id.* (quoting *Fields*, 2011 WL 6217081, at *2) (internal quotation marks omitted). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (quoting *Laber*, 438 F.3d at 427). A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Laber*, 438 F.3d at 427 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is not prejudicial, however, if it simply includes an additional theory of recovery to the facts already stated and is offered before any discovery has occurred. *Id.* (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). With regard to the futility of an amended complaint, if a proposed amendment would fail to withstand a motion to dismiss, it is considered futile. *Woods*, 841 F. Supp. 2d at 930. Thus, "if the well-pleaded facts in the proposed new complaint do not amount to a 'showing' that the plaintiff is entitled to relief," the court should deny a motion for leave to amend. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that a "showing" is more than the "mere possibility of misconduct").

To the extent Plaintiff's above-referenced claims are dismissed, the Court denies Plaintiff's request for leave to amend his Complaint to cure the deficiencies found therein.[15] *See*

---

15. The Court notes that Plaintiff does not have a right to amend his Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1), because Defendants have filed both a responsive pleading and a motion under Fed. R. Civ. P. 12(b)(6). *See Woods v. Boeing Co.*, 841 F. Supp. 2d 925, 930 n.4 (D.S.C. 2012); *see also Hall v. Burney*, No. 11-6566, 2011 WL 5822176, at *2 (4th Cir. Nov. 18, 2011) ("[T]he doctrine of futility only applies when the plaintiff

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (the "grant or denial of an opportunity to amend is within the discretion of the District Court" (citing Fed. R. Civ. P. 15(a))). In his request, Plaintiff fails to specify any different or additional claim(s) against Defendants and does not offer any explanation as to why any such claims could not have been brought, or additional facts included, in his original Complaint. Plaintiff's failure to provide this information deprives the Court of the ability to effectively analyze and address the extent to which Defendants would be prejudiced by an amendment, as well as the potential viability or futility of any additional claim(s). Moreover, Plaintiff's failure to either supply a proposed amended complaint or detail the claim(s) or facts to be added serves to deny Defendants the requisite notice and opportunity to respond. *Woods*, 841 F. Supp. 2d at 930.

Additionally, Plaintiff did not file a motion with the Court seeking permission to amend his Complaint. Instead, Plaintiff merely requested leave to amend his Complaint in one sentence in the first paragraph of his Response to Defendants' Motion to Dismiss and one in the last paragraph. Accordingly, the Court finds that Plaintiff's request fails to qualify as a motion for leave to amend pursuant to Rules 7(b) and 15(a) of the Federal Rules of Civil Procedure. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) ("[W]e cannot say that the district court abused its discretion by declining to grant a motion that was never properly made."); *see, e.g.*, *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

seeks leave of court to amend and does not have a right to amend." (citing *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010))).

1271, 1280 (D.C. Cir. 1994))). Therefore, Plaintiff's request for leave to amend is hereby denied.

<u>**CONCLUSION**</u>

Therefore, for the forgoing reasons, it is **ORDERED** that Defendants' 12(b)(6) Motion to Dismiss is **GRANTED** with respect to Plaintiff's breach of contract cause of action to the extent it is based on Plaintiff's termination; it is **ORDERED** that Defendants' 12(b)(6) Motion to Dismiss Plaintiff's second cause of action is **GRANTED**; and it is ordered that Defendants' 12(b)(6) Motion to Dismiss Plaintiff's third cause of action is **DENIED**. Finally, it is **ORDERED** that Plaintiff's request for leave to amend is **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**October 10, 2013**
**Charleston, South Carolina**